306 So.2d 437 (1975)
Geneva VON CANNON, Plaintiff and Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Defendant and Appellant,
Yvonne S. DONALDSON, Third-Party Defendant and Appellant.
No. 4662.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1975.
Dissenting Opinion January 24, 1975.
Rehearing Denied February 5, 1975.
Writs Refused March 21, 1975.
*439 William T. Kivett, Philip K. Jones, Norman L. Sisson, Robert J. Jones, Howard P. Elliott, Jr., William J. Doran, Jr., Baton Rouge, for defendant and appellant.
Sledge, Garroway & Sleeth by L. D. Sledge, Baton Rouge, for plaintiff and appellee.
William E. Skye, Alexandria, for plaintiff and appellee and third-party defendant and appellant.
Before HOOD, CULPEPPER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
Mrs. Geneva Von Cannon instituted this suit against the State of Louisiana, through the Department of Highways, to recover damages for personal injuries sustained by her when an automobile in which she was riding as a guest passenger collided with a barricade which had been constructed by defendant. The Department of Highways filed a third party demand against Mrs. Yvonne S. Donaldson, the driver of the vehicle in which plaintiff was riding, to recover one-half the amount the Department might be condemned to pay plaintiff.
Judgment was rendered by the trial court in favor of plaintiff against the Department of Highways for $141,830.10. Judgment also was rendered in favor of the Department of Highways against the third party defendant, Mrs. Donaldson, for $70,915.05. The Department of Highways and Mrs. Donaldson have appealed.
After the appeal was perfected, plaintiff filed a motion to remand the case to the trial court to permit her to introduce evidence showing additional damages which she sustained pending the appeal. The case is now before us on the merits and on the motion to remand.
The issues presented are: (1) Was the Department of Highways negligent in failing to maintain a reasonably safe highway? (2) Was Mrs. Donaldson negligent? (3) Was plaintiff guilty of contributory negligence? (4) Is the award of damages excessive? (5) Should the case be remanded to permit plaintiff to introduce evidence showing additional injuries?
The accident occurred about 1:50 a. m. on June 10, 1971, at a point on U. S. Highway 165, in Rapides Parish, where the highway narrows from four lanes to two lanes. The highway runs north and south, and on the above mentioned date the part of it which was south of the scene of the accident was a four lane, divided thoroughfare. The two north bound lanes terminated at the place where the accident occurred. A temporary "cross-over" was located near the end of those lanes and it was designed to enable motorists to turn left, cross the neutral ground and then continue northward on the old two-lane highway.
Immediately before the accident occurred, plaintiff was riding as a guest passenger in an automobile being driven by Mrs. Donaldson. The car was traveling north on the two north bound lanes of the *440 divided highway. When it reached the point where those lanes terminated, Mrs. Donaldson failed to turn left at the "cross-over." Her automobile struck a large wooden barrier which had been erected by the Highway Department near the end of the north bound lanes. Plaintiff sustained serious injuries as a result of the accident.
The weather was clear, the highway was dry, and visibility was good for night driving when the accident occurred. Mrs. Donaldson, according to her uncontradicted testimony, was driving at a speed of between 40 and 50 miles per hour at that time, which was within the legal speed limit. The right front part of her automobile struck the west end of the barricade, and the impact caused Mrs. Von Cannon to be thrown out of the car. There were no skidmarks left by Mrs. Donaldson's automobile at the scene of the accident.
Plaintiff contends that the Highway Department was negligent in having failed to maintain a reasonably safe highway at that point, and that its negligence in that respect was a proximate cause of the accident.
The barrier struck by the Donaldson vehicle was constructed of heavy creosoted wood, and it was located three or four feet north of the end of the north bound lanes of traffic. The west end of the barricade extended a few feet east of the east edge of the pavement.
Although the barricade was dark in color, there were at least eight "left hazard markers" and about that many "bulls eye" markers affixed to the face or to the south surface of the barricade in such a way that north bound motorists would see these markers as they approached them. Each left hazard marker consisted of a board, about six or eight inches wide and two or three feet long, on which diagonal black and white stripes had been painted with reflecting paint. The diagonal lines slanted downward to the left, the purpose being to indicate that the approaching motorist should make a left turn. These markers were spaced about six feet apart over the barricade. The "bulls eye" markers were round, reflecting markers, about four inches in diameter, and they were interspaced with the left hazard markers. They were designed to reflect the headlights of north bound automobiles.
Immediately above the barricade were two large light reflecting signs, each showing a heavy black arrow on a yellow background. The arrow on each sign pointed to the left, indicating that the north bound motorist was required to make a left turn there. One of these signs measured four feet by eight feet, and the other appears from the photographs to have been about two feet by four feet in size. The bottom of each sign was approximately five feet above the surface of the road. The signs were directly in line with the north bound lanes of traffic and they were located at the point where those lanes terminated.
A number of other signs, all painted with light reflecting paint, were located south of the barricade, and they were designed and placed so that they would be seen by north bound motorists. Two large signs, each measuring four feet by five feet and reading "Form Single Line Right", were located on each side of the north bound lanes of traffic, several hundred feet south of the barricade.
Two diamond shaped light reflecting signs, each about two feet square, were located about 100 or 200 feet nearer to the barricade. Each of these signs read, "Divided Highway Ends." These signs were erected on either side of the north bound lanes of traffic, near the pavement.
Another light reflecting sign reading "Speed Zone Ahead" was located closer to, and about 400 feet south of the barricade. It was on the right side of the north bound lanes, near the pavement.
A gasoline service station was located about 200 feet north of the barricade, and a large lighted sign bearing the name *441 "Hudson" and some gasoline prices was located on the premises of that station. The sign was high above the ground and it faced south so that north bound motorists could see it. When lighted, the sign could be seen by north bound motorists at night above the barricade and the markers clustered around it.
The north bound lanes of traffic were constructed of light colored concrete. The cross-over was surfaced with asphalt or a dark colored substance of that kind. A white line, called an "edge line", had been painted along the right or east edge of the north bound lanes for the convenience and safety of motorists, and that line ended abruptly 45 feet south of the point where the north bound lanes of traffic terminated.
Mrs. Donaldson had never driven over that highway before. She stated that plaintiff was directing her to their destination, a house at which they expected to find Mrs. Donaldson's boyfriend with another woman. Plaintiff and Mrs. Donaldson were discussing the activities and supposed fickleness of the latter's boyfriend immediately before the accident occurred. Mrs. Donaldson testified that she was not upset about it, although she was curious. She conceded that she had been up since 6:00 a. m. on the day before the accident occurred, that she had worked hard all day and that she had consumed one drink of an alcoholic beverage and a few sips from another shortly before the accident occurred. A breathilizer test was administered to Mrs. Donaldson about two hours after the accident occurred, and it showed that the alcoholic content of her blood was .088%.
Mrs. Donaldson does not recall seeing any signs at all as she approached the cross-over and the barricade. She does not remember seeing the "Divided Highway Ends" signs, the "Form Single Line Right" signs, the "Speed Zone Ahead" sign, or either of the two large signs containing arrows pointing to her left and located immediately above the barricade. She stated that she did not see the barricade, with its hazard markers and bulls eye reflectors, until she was within a few feet of it. Her testimony was that "all of a sudden it (the barricade) seemed like it was right there in front of me," that she screamed to her passenger to "look out," and that she "tried to swerve to miss the barricade." She does not remember which of the two north bound lanes of traffic she was in as she approached the barricade, and she apparently was not misled or trapped by the white line which ran along the east edge of those lanes of traffic since she did not mention having ever seen or noticed that line. Mrs. Donaldson also does not remember whether her headlights were on high or low beam, or whether the "Hudson" sign located north of the barricade was lighted at the time of the accident. She testified that the area was very dark immediately after the accident occurred, making it difficult for her to find her passenger who had been thrown out of the car, and that indicates that the service station sign was not lighted at that time.
Mrs. Von Cannon has no recollection at all of what happened immediately after the accident occurred. She stated that she does not drive an automobile, but that she previously had ridden as a passenger over that section of the highway during daylight hours.
Three qualified traffic experts who testified in behalf of plaintiff expressed the opinion that the design and construction of the cross-over and barricade were potentially hazardous to motorists. All of them felt that the "rate of taper", or the angle, of the cross-over was too sharp, making it difficult for a motorist to negotiate the cross-over safely at a speed in excess of 35 miles per hour. They agreed that a massive barrier, such as the one which was struck by the Donaldson car here, was more dangerous than a breakaway barrier would be, and that the warning signs and markers which had been erected on, near and south of that barricade were inadequate *442 to sufficiently warn north bound motorists of the danger.
All of these experts expressed the view that a north bound motorist approaching the barricade at night, with his lights on low beam, would not be able to see and react to the barrier in time to avoid an accident. Two of them, Jack Bishop Humphries and Robert Richard Canfield, felt that such a driver would not see the barricade until he reached a point about 250 feet from it. The other expert, Francis E. Twiss, was of the opinion that the night driver should see the barricade within a distance of at least 150 feet of it. All of these experts conceded that if the lights of the vehicle were on high beam, the driver could see the barricade at a much greater distance than those just mentioned. The evidence in the instant suit does not show whether the lights on the Donaldson car were on high or low beam, and we find no justification for assuming that either was the case.

NEGLIGENCE OF THE DEPARTMENT OF HIGHWAYS
The Department of Highways has the duty to maintain state highways in such a condition that they will be safe for the ordinary motorist using reasonable care under the circumstances. LSA-R.S. 32:2; McCallum v. State, Department of Highways, 246 So.2d 46 (La.App., 3rd Cir. 1971); Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App., 3rd Cir. 1963). This includes the duty of providing adequate warnings of and safeguards against dangerous conditions in the highway. There is no hard and fast rule as to the types of warnings or safeguards. Warnings should be sufficient to alert the ordinary, reasonable motorist, having in view the probable traffic, the character of the road and the use reasonably to be anticipated, Christ v. State, Department of Highways, 161 So.2d 322 (La.App., 3rd Cir. 1964). Safeguards should be commensurate with the danger.
The trial judge held that "this cross-over was not reasonably safe for the general or ordinary motorist, was inadequate in curvature of cross-over in design and was inadequately marked to alert a north bound motorist of the situation which he would be confronted with." He found the Highway Department to be negligent in the following respects:
1. The design of the cross-over created an extremely sharp taper which could not be negotiated safely at speeds greater than 25 to 30 miles per hour;
2. The placing of the massive wooden barrier within 3 to 4 feet of the roadway created a greater hazard than which it sought to protect the motorist from;
3. The white edge line down the right side of the road terminated some 45 feet from this barricade which had the effect of drawing the night time motorist into a dangerous trap-like situation;
4. There were no test runs made to determine the effectiveness of the large arrow signs at night;
5. There were no advance warning signs to alert the motorist to the sharp change and alignment of the highway at this change over;
6. There were no signs indicating that the motorist would have to reduce speed in order to safely negotiate the cross-over in spite of the fact that the statutory speed limit under the laws of the State of Louisiana for a four-lane highway is 70 miles per per hour; and
7. There were no cones, barrels, or other channelizing devices in place to guide the motorist through this sharp cross-over safely.
The evidence clearly supports the finding of the trial judge that the cross-over was at too sharp an angle to be negotiated safely at speeds greater than 25 or 35 miles *443 per hour. As stated above, three qualified traffic experts testified for the plaintiff that the construction of the cross-over was hazardous to motorists. Furthermore, Mr. Lonnie Luno, the defendant's project engineer, also testified that the taper of the cross-over was too sharp. Luno explained that the plans for final construction provided a permanent cross-over with a long, gentle taper, joining the new north bound lanes with the old original south bound two-lane highway. The cross-over involved in this litigation was intended to be only temporary, but due to lack of funds or equipment it was never changed.
The evidence also supports the finding of the trial judge that the massive wooden barrier constructed within three or four feet of the point where the newly constructed north bound lanes terminated, also created an unreasonable hazard. The photographs, P-91 and P-92, show that at the time of the accident this massive wooden barricade extended to the extreme western edge of the point where the newly constructed north bound lanes terminated. It would have been preferable to erect a barricade of lighter construction which would break in the event of being struck. Or it would have been even more preferable to have no barricade, but instead to have a line of cones, barrels or other channelizing devices to guide the motorist into the cross-over.
As to the findings of the trial judge listed above as numbers 3, 4, 5 and 6, the Department of Highways makes a persuasive argument that even assuming these deficiencies in the prewarning signs, white lines, etc., they have no causal connection with the accident in this case, because the defendant motorist, Mrs. Donaldson, testified that she did not see any of the prewarning signs, white lines, etc. Mrs. Donaldson testified the first thing she saw was the barricade a few feet in front of her.
However, even assuming that these deficiencies listed as numbers 3, 4, 5 and 6 were not causally connected with the accident, we agree with the finding of the trial judge that the Department of Highways was negligent in not providing cones, barrels or other channelizing devices to guide the motorists safely through this sharp cross-over on a main highway where the speed limit was 60 or 70 miles per hour. It is noteworthy that after this accident the heavy wooden barricade was removed and such channelizing devices were installed. The pictures filed in evidence show this. If such channelizing devices had been in place at the time of the accident, Mrs. Donaldson probably would have seen them in time to turn to the left and miss the end of the barricade.
The evidence shows that the right front part of the car struck the extreme left, or west, end of the barricade. Mrs. Donaldson did not remember which of the two north bound lanes of traffic she was in as she approached the barricade. No skidmarks were left by her vehicle prior to the collision. But she did testify that she did not see the barricade until she was within a few feet of it, and that, although she attempted to turn to her left, she doesn't remember whether she had actually started that turning maneuver before her car crashed into the barrier. The evidence convinces us that Mrs. Donaldson was traveling in the left, or west, lane of traffic when she observed the barricade, because otherwise she would have had to make a very sharp left turn from the right lane and cross the entire left lane.
Even without the channelizing devices, Mrs. Donaldson saw the barricade almost in time to swerve to the left and avoid the accident. If channelizing devices had been placed in the highway in advance of the barricade, she probably would have been able to swerve and avoid striking the west end of the barricade.
We conclude that the lack of channelizing devices, together with the sharpness of the cross-over, constituted negligence which was a legal cause of this accident.

*444 THE NEGLIGENCE OF MRS. DONALDSON
The driver of a motor vehicle has the duty to maintain a lookout and to see that which an ordinary reasonable motorist would have seen under the circumstances. Mrs. Donaldson did not see any of the advance warning signs described above. She did not see the barricade, or the two large arrows above the barricade, until she was a few feet from it. The evidence does not show whether her lights were on high or low beam. However, even with her lights on low beam, she should have seen the barricade much sooner than she did. The evidence is sufficient to support the finding of the trial judge that Mrs. Donaldson did not act as a reasonably prudent driver, and that her negligence was a legal cause of the accident.

CONTRIBUTORY NEGLIGENCE OF MRS. VON CANNON
The Department of Highways contends that Mrs. Von Cannon was contributorily negligent in that she was familiar with this cross-over and failed to warn Mrs. Donaldson about it; that Mrs. Von Cannon and Mrs. Donaldson had been drinking and plaintiff knew or should have known that Mrs. Donaldson's ability to drive was impaired; and that plaintiff distracted Mrs. Donaldson by talking to her. The trial judge correctly rejected these arguments. The evidence does not show that Mrs. Donaldson's ability to drive was impaired by intoxication, nor does it show that Mrs. Von Cannon breached any duty as a guest passenger to direct Mrs. Donaldson in the manner in which she was driving.

THE QUANTUM OF THE AWARD
The award by the district judge is itemized in his written reasons as follows:
"1. For pain and suffering, loss of her right leg, injuries to her shoulders, fractures to her left femur, and fractures of her jaw and teeth$105,000.00
"2. Loss of wages$26,849.07
"3. Past and future medical expense $9,981.03
"Total $141,830.10."
At the time of the accident, Mrs. Von Cannon was approximately 47 years of age and was working as a beauty shop operator, earning about $200 per month. She received a severe injury to the right leg, requiring amputation and leaving about a 9 inch stump. Head injuries consisted of fractures of the facial bones, fractures of the jaw, and loss of teeth, leaving a permanent loss of facial sensation. She also received fractures of the pelvis, the left hip and left ankle, requiring prolonged treatment and leaving residual disability of that leg. Both shoulders were fractured.
The awards are clearly within the much discretion of the trial judge as to the quantum of damages for personal injuries.

THE MOTION TO REMAND
The plaintiff did not appeal or answer the appeal requesting an increase in the award for damages. However, after the delays for appealing or answering the appeal had elapsed, the plaintiff filed in the appellate court a motion to remand this case to the district court for the introduction of additional evidence to show damages resulting from plaintiff's partial blindness and brain damage.
In the case of McKinney v. Levy, 212 So.2d 279 (La.App., 3rd Cir. 1968), we stated the rule that although courts of appeal generally have the right to remand cases for additional evidence to prevent a miscarriage of justice, LSA-C.C.P. Articles 2082 and 2164, this discretion must be sparingly exercised. In the present case the accident occurred on June 10, 1971. the trial commenced two years later, on *445 June 5, 1973, and lasted for a period of four days. On August 21, 1973, the district judge granted a motion by plaintiff to file additional medical records of treatment administered after the trial. The district judge considered all of this medical evidence. In his written reasons, he stated the award contemplated future suffering, disability, loss of wages and medical expenses.
We conclude this is not a proper case for the exercise of our sparingly used discretion to remand for additional evidence to prevent a miscarriage of justice.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
The trial judge found that the Department of Highways was negligent in seven particulars. My colleagues have rejected that holding as to five of the alleged acts of negligence, as they must. They have concluded, however, that the Department was negligent in two particulars, and that those two circumstances constituted a legal cause of the accident. The two acts of negligence attributed to the Highway Department are: (1) The lack of channelizing devices; and (2) the sharpness of the crossover.
I agree with the majority that the holding of the trial court must be rejected as to five of the alleged acts of negligence. I would go further, however, and find that the Department is free of all negligence. I thus respectfully disagree with that part of the holding of the majority that the Department of Highways was negligent in any respect.
In Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3 Cir. 1963), we held:
"The law of this State is settled to the effect that the Department of Highways is not responsible for every accident which may occur on State highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury which may result from obstructions or defects in such highways. The duty of the Department of Highways is only to see that State highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The Department, however, is liable for damages caused by defects in a highway which are sufficiently dangerous to cause an accident and an injury to a person using the highway in a reasonably prudent manner, if the Department has actual or constructive notice of the defect." (Emphasis added).
The driver of a motor vehicle is under a never ceasing duty to maintain a proper lookout and to see what he should have seen. His failure to see that which he should have seen constitutes negligence. He is required to maintain such control over the speed and operation of his vehicle as to permit him to stop within the range of his legal and proper lookout. There are exceptions to this rule, but those exceptions apply only in situations where the accident occurs suddenly and without warning, or where it results from a dangerous condition which could not be detected by a driver who is maintaining a proper lookout and proper control over his vehicle. DeGregory v. State, Department of Highways, 192 So.2d 834 (La.App. 1 Cir. 1966); Dabov v. Allstate Insurance Company, 302 So.2d 697 (La.App. 3 Cir. 1974).
A driver who fails to maintain a proper lookout and fails to see what he should have seen is not exercising ordinary care and reasonable prudence. And, the Highway Department is not obliged to maintain state highways in such a condition that *446 they will be safe for such a careless driver, or for one who does not exercise ordinary care and reasonable prudence.
In the instant case the majority has found specifically that Mrs. Donaldson, the driver of the automobile in which plaintiff was riding, did not maintain a proper lookout, that she failed to see what she should have seen, and that she did not exercise ordinary care and reasonable prudence. The majority opinion states:
"Mrs. Donaldson did not see any of the advance warning signs described above. She did not see the barricade, or the two large arrows above the barricade, until she was a few feet from it. The evidence does not show whether her lights were on high or low beam. However, even with her lights on low beam, she should have seen the barricade much sooner than she did. The evidence is sufficient to support the finding of the trial judge that Mrs. Donaldson did not act as a reasonably prudent driver, and that her negligence was a legal cause of the accident." (Emphasis added).
In finding that the Highway Department was negligent, the majority said "the Department of Highways was negligent in not providing cones, barrels or other channelizing devices to guide the motorists safely through this sharp cross-over on a main highway where the speed limit was 60 or 70 miles per hour." My colleagues found, of course, that Mrs. Donaldson was driving at a speed of between 40 and 50 miles per hour as she approached the barrier, that she passed numerous signs warning of the danger before she reached the barricade, that there was no conceivable excuse for her to fail to see the barricade itself with its many reflecting signs and warning devices long before she reached it, and that Mrs. Donaldson nevertheless did not see any signs or warnings at all before she crashed into the barrier without even applying her brakes.
As I understand the majority opinion, my colleagues have concluded that if Mrs. Donaldson had exercised ordinary care, or even the slightest care, she would have seen the barricade at least 150 feet before she reached it, even assuming facts most favorable to plaintiff's case, and that the accident thus would not have occurred. They concede that she almost missed the barricade even though she did not see it until she was within five or six feet of it. Yet, the majority holds that the Department of Highways was negligent and is liable in damages because it failed to make the highway safe for such a grossly reckless driver. It holds, in effect, that the Department was negligent in failing to install channelizing devices to guide careless drivers through the crossover, that is, drivers who do not see the many warning signs and signals which the law requires them to see.
I believe that this judgment, if allowed to stand, will make the Department of Highways the insurer of every motorist who uses the highways, regardless of how careless or heedless he may be of warning signs or devices.
The majority relies on the testimony of three traffic experts who were engaged by plaintiff to prove how dangerous the highway was at that point. Two of these experts testified that the area was "over signed," explaining that there were so many signs warning motorists of the danger at that point that motorists would tend to get confused with all of the warnings that were given. The majority holds, however, that the Department of Highways was negligent in having failed to install even more signs than already existed.
Jack Bishop Humphries, one of the traffic experts called by plaintiff, testified that:
"There were large number of signs. The effect of large number of signs or over-signing is that the motorist fails to see any of the signs or to comprehend any of the signs."

* * * * * *
*447 "In a distance of some 1,600 feet along this northbound roadway, just along the northbound roadway, itself, there were 15 signs and/or groups of signs, sign assemblage. In addition there were also some signs over on the other half of the roadway that were positioned for the northbound motorist to read. So, we had 15 groups or signs or groups of signs that the motorist was confronted with as he drove north on this section."

* * * * * *
"I wouldn't state that it did create a confusion, I would say that it has a potential of creating a confusion ..."
The signs did not create a "confusion" in this case, because Mrs. Donaldson did not see a single one of the many signs or warning devices before she crashed into the barricade. The majority seems to feel that if there was one more sign or warning device Mrs. Donaldson might have seen it.
Francis E. Twiss, another expert called by plaintiff, testified that "there are a lot ofmany more signs down the road, but as one of the main tenet of the manual is that over-signing can be as dangerous as no signing, and in looking this location over it was my opinion that it was well over-signed; just too many signs and too many decisions for an individual to take in and the end result is they just ignore them," and that "there are so many signs that drivers have a tendency to cut out the meaning of all signs because of that."
The majority holds here that on the basis of this expert's testimony there should be more signs.
Robert Richard Canfield, the third expert called by plaintiff, conceded that there were many signs warning a motorist of the danger long before he reached the barricade, but he felt that the highway was dangerous at that point because the driver "must recognize the fact that a divided highway ends," and that he thus has to "make a significant number of decisions over a section of road that is approximately about a third of a mile long." (I respectfully suggest that every driver must make many such decisions every time he operates a motor vehicle on a highway). He concludes that the danger is that the motorist is induced to drive along the easternmost lane of traffic until he gets near the barricade, and that he then must turn sharply to his left and cross the 10-foot wide westernmost lane before he gets to the crossover and thus avoids striking the barricade. Mr. Canfield also stated that even if Mrs. Donaldson had failed to see any of the advance warning signs, she nevertheless should have seen the barricade clearly when she reached a point from 250 to 300 feet from it, even with her lights on low beam. He overlooked the fact, found by the majority, that Mrs. Donaldson was not driving in the easternmost lane of traffic as she approached the barricade, and that she thus did not have to make a sharp left turn across the westernmost lane in order to avoid striking the barricade. According to this expert's opinion, Mrs. Donaldson should have seen the barricade at least 250 feet before she reached it, even if she failed to observe all other warnings, and that she then could have avoided an accident by veering only slightly to her left.
The majority does not mention the experts called by defendant, all of whom stated that the signs were adequate and should have put any northbound driver on notice of the danger.
Despite the fact that Mrs. Donaldson's failure to see the barricade long before she reached it is inexcusable, the majority speculates that the accident might have been avoided if the Highway Department had placed channelizing devices, such as barrels or cones, on the highway to guide the negligent and unobserving motorist to her left. It finds that the Department was negligent in having failed to take that precaution.
*448 I agree that, by using hindsight, the installation of barrels or cones might have lessened the chance of an accident, just as the installation or use of streetlights, neon darting arrow signs, audible warnings or a flagman might have done. The test to be applied here, however, is not whether the Highway Department could have taken some other safety measure which likely might have avoided this accident despite Mrs. Donaldson's gross negligence. Instead, I think the test should be whether the Department constructed warnings which would have been adequate for a driver exercising ordinary care and reasonable prudence as he uses the highway.
I do not believe that the majority is justified in speculating that Mrs. Donaldson would have seen the barrels or cones in time to avoid striking them. There were many more warning devices on the barricade than there would have been on barrels or cones, and yet she did not see that barrier. It may be that her passenger would not have been injured if Mrs. Donaldson had struck the barrels before she reached the barricade, but I do not think we should base decisions on that kind of speculation.
Mrs. Donaldson had been drinking and she obviously was emotionally upset, since she had just been informed that her boyfriend was trifling on her, and she was in the process of checking on the truth of that report. Her emotional state may account for her failure to see any of the many warning signs and markers which were there. I do not think it is the duty of the Highway Department, however, to maintain safety devices sufficient to protect a driver under those circumstances from accident or injury.
In my opinion the Highway Department had constructed signs which were sufficient to warn a driver who was using the highway in a reasonable and prudent manner. It thus complied with its full duty.
The majority also finds that the Highway Department was negligent in maintaining a crossover with a sharp angle.
The angle of the crossover had nothing to do with this accident. Mrs. Donaldson never saw the crossover, and she never attempted to negotiate it. She, in fact, drove past the point where she should have turned to her left to get onto the crossover before she even saw the barricade.
My colleagues suggest that the crossover was "intended to be only temporary," but that due to lack of funds or equipment it was never changed. It is true that the crossover was temporary, as all such crossovers are. The northbound lanes of this highway were constructed up to the point where the barricade was erected, and there had to be some means of getting from the northbound lanes over to the southbound lane, so that northbound traffic could continue on the highway. A temporary crossover was necessary, and it was the type of facility which is always used under those circumstances. It was temporary in the sense that it was to be used until the Highway Department was able to resume the construction of the two northbound lanes. There is nothing negligent about constructing a temporary crossover in such a case.
If Mrs. Donaldson had turned over or had had an accident while attempting to negotiate the crossover, then we might attribute the accident to the angle of that crossover. That did not happen in this case, however, and I think the majority is wrong in holding that the design of the crossover was a legal cause of this accident.
The majority does not hold that the Department of Highways was negligent in constructing a massive barrier at that point, but they comment in the opinion that it would have been "preferable" to erect a barricade of lighter construction, and that it would have been "even more preferable" to have no barricade at all but instead to have a line of cones, barrels or other channelizing *449 devices to guide the motorist into the crossover.
The evidence shows that the construction of the northbound lanes was completed and the barrier was erected in 1969. At that time there was a relatively deep ditch running east and west and located immediately north of the point where the northbound lanes terminated. A substantial barrier was erected to prevent vehicles from running into that ditch. No one suggests that the Highway Department was wrong in constructing a massive barricade under those circumstances. Mr. Canfield, in fact, stated that "a rigid barricade is acceptable if the hazard created by hitting the barricade is not nearly as great as the hazard created by hitting the obstruction." After the barricade was erected in 1969, and before this accident occurred in June, 1971, the owners of a service station located in that vicinity filled in the ditch to the extent that the area north of the barricade appeared to be a grassy area, and by doing so they may have removed the danger which the barrier was designed to prevent. Some of the traffic experts felt that less damage would have occurred if the barricade had been removed after the ditch was filled in. The evidence does not show when the ditch was filled in, however, or whether it was filled in to the extent that it would have been less hazardous for a negligent driver to run onto that grassy area instead of into the barricade. I agree with the majority that the Highway Department was not negligent in constructing and maintaining a massive barricade at that point, but I disagree with the observation that it would have been preferable to erect one of lighter construction.
The plaintiff in this case suffered seriour injuries, and I sympathize with her as I am sure my colleagues do. As I interpret the law, however, I must disagree with the holding of the majority that the Department of Highways was negligent.
For these reasons I respectfully dissent.