671 So.2d 533 (1996)
Denia C. HUDDLESTON and Jeffery Wayne Huddleston, Individually and on Behalf of their minor child, Carolina Huddleston, and Jeff's Equipment & Supply, Inc.
v.
RONALD ADAMS CONTRACTOR, INC. and State of Louisiana, Through Department of Transportation & Development.
No. 95 CA 0987.
Court of Appeal of Louisiana, First Circuit.
February 23, 1996.
*534 R. Scott Ramsey, Jr., Morgan City, for Plaintiffs-Appellants. *535 Philip J. McMahon, Houma, for Defendant-Appellee Ronald Adams Contractor, Inc.
Julius W. Grubbs, Jr., New Iberia, for Defendant-Appellee State of Louisiana, Through Department of Transportation & Development.
Before LeBLANC, WHIPPLE and FOGG, JJ.
FOGG, Judge.
Denia C. Huddleston and Jeffery Wayne Huddleston, individually and on behalf of their minor child, Carolina Huddleston, and Jeff's Equipment and Supply, Inc. filed the instant suit seeking damages arising out of a single vehicle accident. The plaintiffs appeal the ruling of the trial judge in favor of the defendants, Ronald Adams Contractor, Inc. and the State of Louisiana, Department of Transportation and Development. We affirm.
On or about April 1, 1991, Ronald Adams Contractor, Inc. (Adams) contracted with the State of Louisiana, Department of Transportation and Development (DOTD) to undertake and complete Project No. 5-01-59. That project included the widening of U.S. Highway 90 in Morgan City where the instant claim arose, from four lanes with improved shoulders to five lanes with sidewalks, curbing and improved drainage. During September of 1991, the shoulders of Highway 90 were removed and twelve inches of limestone was used as replacement fill; this created a drop-off between the existing roadway and the area where the shoulder had been. To provide ingress and egress for the homes and businesses in the area, additional limestone was used to build ramps to act as driveways.
A few days before the accident at issue occurred, the limestone ramp was removed from the driveway in question so that six inches of asphaltic concrete (blacktop) could be placed on top of the twelve inches of limestone. This work left a difference in the height between the roadway, the shoulder area and the curb. Another temporary ramp was built to provide ingress and egress into the businesses and homes in the area. This ramp was constructed of blacktop and was approximately twenty feet wide.
On or about February 23, 1992, Denia Huddleston was driving a Chevrolet Corsica, which was owned by Jeff's Equipment & Supply, Inc., to her husband's place of business on the north side of U.S. Highway 90 in Morgan City. Her husband, Jeffery Huddleston, and her daughter, Carolina, were passengers in the vehicle. Mrs. Huddleston attempted a left turn from Highway 90 onto the temporary driveway. Allegedly, the front wheels of her vehicle went over the curb and, then, her car bottomed out bringing the car to an abrupt halt. Mrs. Huddleston asserts that although she was wearing her seat belt, the impact caused her to strike her head and neck on the steering wheel. She asserts her daughter was bruised by her seat belt. Although Mr. Huddleston was not injured in the accident, he claims a loss of consortium. Additionally, the vehicle was damaged.
After trial on the merits, the judge, applying a duty-risk analysis, found that defendants' actions were not a cause-in-fact of the accident and further found that the defendants did not breach an owed duty to the plaintiffs. From a judgment dismissing their lawsuit, the plaintiffs appeal.
On appeal, the plaintiffs contend the trial court judge erred in concluding that the drop-off from the highway to the shoulder area was one and one-half inches and was not a danger to the plaintiffs. They further contend the trial court judge erred in concluding that the warning signs placed along the highway were sufficient to alert the plaintiffs of the condition of the driveway.
For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987). Thus, the reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial *536 court's finding was clearly wrong of manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989).
The issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, 617 So.2d at 882. Furthermore, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
The plaintiffs contend the trial judge erred in finding that they failed to establish that the condition of the shoulder of the road and the ramp caused the accident. They contend the drop-off constituted a clear danger and Adams and DOTD failed to properly warn motorists of the dangerous construction conditions. In making this assertion, they rely on the testimony of several witnesses who testified on their behalf at trial. Sidney Solar testified that a few weeks after the accident occurred he was driving an automobile that was smaller and lower than the car he regularly used. He stated that while driving on the same driveway involved in the instant action, the smaller car bottomed out and was damaged. However, he stated that when driving his own car he did not have a problem traversing the driveway. Furthermore, he admitted that if he had been driving at a slower speed he would not have had a problem even in the smaller car.
Suzanne Fisher, a co-worker of the plaintiffs, testified that she crossed the driveway on the same day as the instant accident, although she was going in the opposite direction. During that crossing, her car bottomed out, but she continued on her way as her vehicle suffered no damage. She testified further that she had no problem crossing the driveway until her tire went off the ramp because she had misjudged the distance.
Blaine Larson, who owns a business in that area, testified that he had experienced only one problem crossing the driveway while it was under construction. He testified that at that time he was racing to beat the traffic. After that one incident, he had no further problems because he slowed down when he crossed the driveway.
Both Mr. and Mrs. Huddleston testified that Mrs. Huddleston went to work at an office located on Highway 90 on an almost daily basis. She admitted she was aware of the construction in the area, including the construction on the driveway.
Michael Eldridge, a project engineer for DOTD, testified that warning barrels were placed along the entire length of the project alongside the road beginning at the depressed area. He stated that the depressed area was only three inches deep and provided the trial court with a comprehensive explanation of the construction of the three inch depression. He explained that a few days before the accident, the contractor laid a four inch base and a two inch binder which left an indentation of only three inches. Further, he testified that once the ramps were in place, there was only a one and one-half inch drop.
Francis H. Wyble, an expert in civil engineering, testified that the entire construction site was clearly signed and marked. He stated that there are no specifications for marking driveways at a construction site and that signs are only required for areas where hazards are not self-evident.
Randy Dardeau, a project superintendent for Adams, testified that he measured the indentation and it was three to four inches at its deepest point. When asked if the indentation was six or seven inches he replied that it was not and provided the court with a comprehensive explanation of why it could not have been that deep.
The plaintiffs brought this suit under theories of both negligence and strict liability. Under either theory, the duty owed is the same and a finding of cause-in-fact is essential to the assessment of liability. Ryland v. Liberty Lloyds Insurance Company, *537 93-1712 (La. 1/14/94), 630 So.2d 1289. In Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La.1993), the court identified four questions which must be considered in applying duty-risk analysis:
1. Was the conduct in question a cause-in-fact of the resulting harm?
2. What, if any, duties were owed by the respective parties?
3. Were the requisite duties breached?
4. Was the risk and harm caused within the scope of protection afforded by the duty breached?
Cause-in-fact is usually a "but for" inquiry which tests whether or not the injury would have occurred "but for" the defendant's sub-standard conduct. Faucheaux v. Terrebonne Consolidated Government, 615 So.2d at 292. A finding of no cause-in-fact ends the inquiry into liability.
The courts have long recognized the necessity of construction work in the maintenance of highways and that hazards will often exist during the course of construction. That recognition has resulted in a lowering of the standard of care required in a construction area; nevertheless, there is a duty to warn motorists of dangerous construction conditions. Golden v. Madden Contracting Company, Inc., 469 So.2d 1039 (La.App. 2d Cir.), writ denied, 475 So.2d 363 (La.1985); Brandon v. State, Through Department of Highways, 367 So.2d 137 (La. App. 2d Cir.), writ denied, 369 So.2d 141 (La.1979). There is no exact rule as to the types of warnings or safeguards that are required for dangerous highway conditions. Warnings should be sufficient to alert the ordinary, reasonable motorist, having in view the probable traffic, the character of the road and the use reasonably to be anticipated. Safeguards should be commensurate with the danger. Von Cannon v. State, Department of Highways, 306 So.2d 437 (La.App. 3d Cir.), writs denied, 309 So.2d 681 (La.1975).
Cause-in-fact is a factual question to be determined by the factfinder. Cay v. State, Department of Transportation and Development, 93-0887 (La. 1/14/94), 631 So.2d 393. In the instant case, the trial court found that building an asphalt ramp with a one and one-half inch drop was not a substantial factor in bringing about plaintiffs' injuries and damages. She found that from the testimony of the experts and common sense, it was unlikely that a one and one-half inch drop could cause the plaintiffs' vehicle to come to an abrupt stop and throw Mrs. Huddleston against the steering wheel as she described. Further, the trial court found that, even if the conditions were as described by the plaintiffs, construction warning signs were placed along the highway and Mrs. Huddleston was well aware that the shoulder was under construction. Our review of the record convinces us that the trial judge did not manifestly err in finding that the conduct of Adams and DOTD was not a cause-in-fact of the plaintiffs' damages.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to the plaintiffs.
AFFIRMED.