486 So.2d 267 (1986)
Robin KENNISON, Plaintiff-Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, et al., Defendants-Appellants.
No. 85-200.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1986.
Writ Denied June 13, 1986.
Fournet & Adams, Robert J. Adams, Lafayette, for defendants-appellants.
Alex Andrus, III, Opelousas, for plaintiff-appellee.
James R. Lewis, Lafayette, for defendant-appellee.
Before LABORDE and YELVERTON, JJ., and FONTENOT, J. Pro Tem.[*]
YELVERTON, Judge.
This appeal involves a one vehicle accident allegedly caused by the failure to adequately mark and sign a highway curve. The plaintiff-appellee is Robin Kennison, a passenger in the vehicle. The defendants-appellants are the State of Louisiana, through the Department of Transportation and Development (DOTD), H & S Construction Company, Inc., and the latter's insurer, Northwest Insurance Company.
The accident happened on July 30, 1981. Robin Kennison, a passenger in the vehicle, filed suit against DOTD, H & S Construction and its liability insurer alleging that the vehicle failed to negotiate a curve due *268 to the defendants' failure to warn of the approaching curve. DOTD answered the suit alleging that the accident was caused solely by the negligence of Janet Palmer, the driver of the vehicle. DOTD also alleged the affirmative defenses of contributory negligence and assumption of the risk on the part of the plaintiff. DOTD additionally filed a third party demand against H & S Construction alleging that under the terms of the construction contract between the parties H & S was responsible for the maintenance of the roadway in question, and it had agreed to indemnify DOTD for any loss arising from its negligence in the maintenance of the roadway. Trial on the merits began on December 16, 1983 and after a recess, ended on February 2, 1984. On September 18, 1984, judgment was rendered for the plaintiff, Robin Kennison, against the defendants in the sum of $103,346.75 together with legal interest, and in favor of the third party plaintiff, DOTD, against H & S Construction for the full sum of the judgment.
From this judgment the defendants have appealed. We reverse. We decide this case on the issue of cause-in-fact.

FACTS AND TESTIMONY DEALING WITH CAUSE-IN-FACT
The accident occurred on a curve near the south intersection of a North-South service road, during the construction of 1-49. The service road was approximately three quarters to a mile in length and linked Harry Guilbeau Road on the North with the Sunset-Grand Coteau interchange to the South, in St. Landry Parish. The two-lane service road had been recently constructed and the centerline was well marked. The road had a sharp curve near Guilbeau Road. The parties stipulated that the proper advisory speed sign for the curve, had there been one, would have shown 30 miles per hour. But no advisory speed signs were posted along this curve. The road was brand new and still technically closed for construction. The parties disputed the presence of a "Road Closed" barricade at either end of the service road.
Janet Palmer, the driver, died as a result of the accident. The parties stipulated that the driver's blood alcohol content was .14.
Robin Kennison, the plaintiff, related the events preceding the accident. On the evening of July 29 she took Dawana Palmer, Janet Palmer and Roxanne Kennison to work at Outlaw's Saloon in Dawana's car, dropping them off at seven or eight p.m. She then went to a pool hall in Opelousas. After about one and one-half hours she left and went to Oak's Lounge where she spent about two hours drinking beer. Cheryl Bergeron drove her back to Outlaw's where she stayed about 30 minutes. She left Outlaw's in Dawana's car with Dawana and Janet Palmer. Janet Palmer was driving the car when the accident happened; Dawana was seated in the passenger's seat and she, Robin, was lying down in the back seat.
The testimony of the other passenger, who was the deceased driver's sister, disagreed to some extent with the plaintiff's version of the events. She declared that her sister, Janet Palmer, had driven the car to Outlaw's that night. Janet had taken the service road south from Guilbeau Road in order to get to the bar. Dawana said that Janet had been working at Outlaw's for a month before the accident and that she normally took the service road to and from work. Since Janet did not own a car she liked to drive her sister's car when her sister took her to work. The witness, Dawana, had noticed the "Road Closed" barricades before the accident and had fussed at her sister, Janet, for using the road. Janet had driven around the barricades in order to use the road on several occasions. The barricades could have been there on the night of the accident. Janet had had two mixed drinks on the night of the accident but did not appear intoxicated. Dawana said that the vehicle was traveling fast before going out of control around the curve.
Sergeant David Richard, a state trooper, investigated at the scene of the accident. He testified that the service road had no curve or directional signs or advisory speed *269 indicator signs preceding the curve. The lack of signs indicated to him that the road was still under construction. There was some traffic using the road on the night of the accident. The road had a centerline; however, there was no line designating the edge of the highway from the shoulder. He noted the physical evidence. The vehicle left scuff marks on the highway 27 feet long. It then traveled 63 feet on the shoulder while in a half spin. It then left the highway and traveled another 45 feet before hitting an embankment, and continued another 24 feet before coming to rest. In all the car went 192 feet seven inches before stopping. Although he could not determine the exact speed of the vehicle before the driver lost control, he estimated the speed between 50 and 55 miles per hour.
Richard Williams, another investigating state trooper, related his findings on the night of the accident. The weather was dry. The highway was newly paved and had no drop-off. A white dash line down its center was the only visible traffic control. The roadway was 24 feet three inches wide, the shoulder was six feet nine inches wide. The vehicle left a scuff mark 27 feet one inch in length before leaving the highway, then traveled on the shoulder for 63 feet. After leaving the shoulder it flipped and the driver was ejected from it. The officer investigated the roadway in the direction from which the vehicle came and found that at the southern end of the service road there was a four by eight foot barricade covering half of the road. The barricade had flashing lights and orange and silver reflectors. The barricade was one-quarter to one-half a mile from the curve and indicated to him that the road was closed. It was in the southbound lane.
Roxanne Kennison, plaintiff's sister, arrived at the scene of the accident shortly after it happened. She testified that Outlaw's was approximately one and one-half to two miles from the curve. She did not notice a barricade at the south end of the service road. Roxanne had driven this road several times and was aware of the curve; she was not sure if Janet was aware of the curve. Janet, when riding to work with the witness, usually did not drive. Janet did not appear intoxicated on the night of the accident.
Louis Thomas stated that he provided wrecker service on the night of the accident and he did not notice a barricade. Michael Touchet who delivered shell for Outlaw's parking lot in June and July 1983, stated that there were no barricades on the service road during this time.
Several DOTD employees testified that the service road was barricaded during construction. The project's diary showed all barricades were up on the date of the accident. The crew checked on a regular basis to insure the barricades were up. The road was being used by local traffic during the day while under construction, but through traffic was not supposed to use it.

CAUSE-IN-FACT
The trial court recognized that to recover under either a strict liability theory (C.C. art. 2317) or a negligence theory (C.C. art. 2315), the plaintiff had to prove that an unreasonable risk of harm created by the DOTD was a cause-in-fact of the harm that actually occurred. After finding that the barricades at the beginning of the approximate mile long construction area were not in place, and that the curve in the construction area was not signed, the trial court concluded that these failings caused the accident. It is with this conclusion that we find clear error.
DOTD does owe a duty to the traveling public to erect signs and adequate markings to warn against extremely dangerous, trap-like hazards, unusual obstructions, perilous conditions or defects in the road. Vervik v. State of Louisiana, Department of Highways, 302 So.2d 895 (La.1974); Richardson v. Continental Ins. Co., 468 So.2d 675 (La.App. 3rd Cir.1985), writ denied 474 So.2d 1304 (La.1985). Warnings should be sufficient to alert the ordinary, reasonable motorist, having in view the probable traffic, the character of the road and the use reasonably to be anticipated. *270 Von Cannon v. State, Department of Highways, 306 So.2d 437 (La.App. 3rd Cir. 1975), writ denied, 309 So.2d 681 (La.1975). The duty to warn exists also when dangerous conditions are created during the State's maintenance or repairs of highways. Duffy v. State, Dept. of Transp., Etc., 415 So.2d 375 (La.App. 1st Cir.1982), writ denied 420 So.2d 448 (La.1982).
In the present case this three-quarters to one mile service road had been under construction for several months and was nearly finished. The road surface and shoulders were completed. Although barricades were present on each end of the project, they were not in place; in fact, the road was open to local traffic, and had been for over a month. The signs warning of the curve in the segment, and directing drivers to reduce their speed, were not yet erected. We agree with the trial judge on these facts that the State violated its duty to warn travelers of the curve in the construction project.
But the breach of the duty results in recovery for plaintiff only if it was the cause-in-fact of her injury. Janet Palmer, the driver of the vehicle, had traveled that relatively short construction project on numerous occasions during the previous month going to and from work. She knew the curve was there. On many of these trips she was the driver of the car in which she rode. She had traversed the route just hours before the accident, driving, according to one witness. At the time of the accident she had been drinking; her blood alcohol reading was .14. According to her sister, the deceased was "traveling fast", and the scuff marks and distance her car traveled after leaving the road confirms an excessive speed. Although this short road was not physically closed by barricades, the barricades were there and they were visible. The curve was not more than half a mile from the barricades. Unquestionably, the deceased knew the road was still under construction, and she was familiar with the curve, having driven it during both daytime and nighttime hours. It was not an absence of warning by the DOTD that caused the plaintiff's injury. It was the sole negligence of Janet Palmer.
The trial judge gave much thought and deep consideration to this difficult case, however, we believe he committed fundamental error in regarding the State's activity as a cause-in-fact. The trial judge relied on what he considered a jurisprudential assumption that if a road is properly signed the driver will obey the sign, and that the absence of a sign when an accident happens is always the cause-in-fact of that accident, citing Vallot v. Touchet, 337 So.2d 687 (La.App. 3rd Cir.1976). That case involved a missing stop sign at an intersection, and a resulting collision when the car on the unfavored road did not stop. The case did not hold that everytime there is a missing highway sign, its absence is a cause-in-fact of any accident that happens there. Stop signs and curve signs serve altogether different purposes and apply to drivers in different situations. Stop signs are regulatory devices to stop the flow of traffic on a given street or road, and they apply to all drivers indiscriminately, whereas curve signs are merely to assist unwary or unfamiliar drivers by providing advance warning of road conditions requiring extra caution.
In reaching its cause-in-fact conclusion the trial court also relied on Hall v. State, Department of Highways, 213 So.2d 169 (La.App. 3rd Cir.1968), writ denied, 252 La. 959, 215 So.2d 128 (1968). This reliance is misplaced. Although Hall involved an unwarned curve and a finding that the State's negligence concurred with the driver's as a cause-in-fact of the accident, implicit in the recitation of facts was a suggestion that the driver had little or no previous experience with the road and its curve.
Our brothers of the First Circuit have had occasion to deal with driver knowledge of unsigned curves and cause-in-fact. In McLeod v. Parish of East Baton Rouge, 414 So.2d 1341 (La.App. 1st Cir.1982), writ denied 420 So.2d 455 (La.1982), the Parish was held free of responsibility for an accident that happened when a car failed to make a curve on a parish road. There *271 were no curve warning signs on the road, but the driver of the car was familiar with the road, having driven on it many times before the accident. In a suit brought by the driver against the Parish, the Court of Appeal agreed with the trial judge that the lack of a warning sign did not cause plaintiff to miss the curve. It was not the cause-in-fact of the injury.
Similarly, in Duffy v. State, Dept. of Transp., Etc., supra, it was held that the breach of a duty to warn of a dangerous buildup of gravel during grading maintenance operations was not the cause-in-fact of an accident where the plaintiff had traveled the road previously and knew of the buildup. See also Efferson v. State, Through Dept. of T. & Dev., 463 So.2d 1342 (La.App. 1st Cir.1984), writ denied 465 So.2d 722 (La.1985).
In Guidry v. Whitmore, So.2d 1298 (La.App. 3rd Cir.1985), writ denied 480 So.2d 742 (La.1986), we held that the DOTD's failure to warn a truck driver that there was two-way traffic on a normally one-way roadway he was about to cross, was not the cause-in-fact of his passenger's injury, where he ran double stop signs at the crossing, and had knowledge of the two-way traffic. We also held that the Department was not strictly liable, regardless of whether the construction site was a defective thing, because the plaintiff's harm did not result from the defect.
For the foregoing reasons, we reverse the judgment of the trial court, and render judgment against plaintiff, Robin Kennison, rejecting her demands, and dismissing all claims against defendant and third party defendants. Appellee, Robin Kennison, is to pay all costs in the court below and on appeal.
REVERSED AND RENDERED.
NOTES
[*] Judge H. Ward Fontenot of the Thirty-Eighth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.