CRAINi Judge.
This is an appeal from a judgment in favor of plaintiff in a personal injury action against the Department of Transportation and Development (DOTD).
On April 21, 1982, at approximately 1:20 a.m. a right angle collision occurred at the intersection of U.S. 51 (Railroad Avenue) and U.S. 190 (West Morris Street) in the City of Hammond. U.S. 51 is a two lane, two way highway that runs in a north-south direction. U.S. 190 is a two lane, one way street for eastbound traffic. On the date of the accident during the hours of 5:30 a.m. to 11:30 p.m. the intersection was controlled by a semaphore light which operated in a continuous mode (amber, red, green). From 11:30 p.m. to 5:30 a.m. the light operated in a flashing mode. The traffic light was properly operating in a flashing mode when the accident occurred. Both drivers had an unobstructed view of the traffic light.
Donna Burge, driving a 1981 Buick, approached the intersection heading south on U.S. 51 which at that point was controlled by a flashing red light. Thomas Geer, driving a pickup truck, was heading east on U.S. 190 approaching the intersection which for him was controlled by a flashing amber light. The Burge and Geer vehicles collided at the intersection, resulting in severe personal injuries to Burge.
Burge filed suit against the City of Hammond, Allstate Insurance Company (the lia *1322 bility insurer of Geer), and the DOTD. Allstate filed a third party action against the City of Hammond and DOTD.
Summary judgment was granted in favor of the City of Hammond since the intersection was under the sole control and custody of DOTD. A summary judgment was also granted in favor of Allstate. No appeals were taken from either summary judgment. The case proceeded to trial with DOTD as the sole defendant.
The trial court determined that DOTD was negligent and rendered judgment against the department in the amount of $2,113,591.19. Fifty percent negligence was attributed to Burge for failing to yield the right of way thereby reducing the damages awarded to $1,056,795.59. From this judgment DOTD appeals.
THE CONDUCT OF BURGE
All persons must comply with the instructions or directions of authorized traffic control devices. La.R.S. 32:56(B); La. R.S. 32:231(A). A motorist whose approach to an intersection is controlled by a flashing red signal “shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or if none, then before entering the intersection.” La. R.S. 32:234(A)(1). The driver must then “yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.” La.R.S. 32:123(B). La.R.S. 32:234(A)(2) provides that a driver may proceed through or past a flashing amber signal only with caution.
Upon approaching the intersection on U.S. 51 from the north there is a stop bar located north of a pedestrian cross walk 23'4" north of the extended north curb line of U.S. 190. When the light is in a continuous mode a driver going south on U.S. 51 faced with a red light would stop at the stop bar and wait for the light to change, while allowing pedestrian traffic to cross. Traffic approaching from the west cannot be observed at this point. Thus, a driver seeking to enter the intersection would have to rely totally on a green light on U.S. 51 meaning that traffic on U.S. 190 is faced with a red light and will stop in obedience to the red light. When the light is in a flashing mode the driver on U.S. 51 with the flashing red has to approach the intersection with the knowledge there is no timed stop for U.S. 51 or U.S. 190 traffic. Consequently, it is the duty of the driver to stop at a point where visual observation can be made of traffic approaching or entering the intersection on U.S. 190. The driver controlled by the flashing red light is under a duty to yield the right of way to such traffic before entering the intersection.
The trial court found that Burge stopped at the stop bar located 23'4" north of the extended curb line of U.S. 190. At this point Burge’s view of traffic approaching or entering the intersection on U.S. 190 was totally obstructed by a building located on the northwest quadrant of the intersection. The south edge of the building is located 18'8" from the north curb of U.S. 190. The trial court stated: “Rather than pulling up further and stopping again to get a better view of approaching traffic, Mrs. Burge simply pulled off, as she was in the habit of doing during the day.” [1]
Photographs admitted as evidence depict the driver’s view of the intersection with the automobile positioned in a southerly direction on U.S. 51 with the front bumper located approximately ten feet from the northern extended curb line of U.S. 190. Despite the partial sight obstruction caused *1323 by the bushes and utility poles, it is evident that an attentive driver would have a good view of the intersection itself and of traffic approaching the intersection on U.S. 190 from at least 544 feet west of the intersection (to the driver’s right).
The investigating officer testified that the impact speed of Burge’s vehicle was 30 miles per hour. Dr. Olan Dart, an expert in traffic engineering, estimated the impact speed of Burge’s vehicle to be twenty-five miles per hour. He further stated that the achievement of an impact speed of twenty-five miles per hour from a dead stop approximately twenty-five feet from the intersection would require acceleration at a rate commonly referred to as “digging out”. Additionally, the headlights of both vehicles were on when the accident occurred. Photos of the intersection taken at night from U.S. 51 illustrate the clear visibility of headlights of vehicles traveling easterly on U.S. 190.
Upon review of the record we find that the trial court correctly determined that Burge was negligent. Burge would have been able to obtain a clear view of the intersection and approaching traffic had she exercised ordinary care and reasonable prudence. Instead, she entered the intersection at a very fast rate of acceleration from a point where her view of approaching traffic was totally obstructed. She failed to yield the right of way to Geer thus causing the collision and her ensuing injuries.
LIABILITY OF DOTD
The primary issue on appeal is the liability of DOTD. Eleven right angle collisions occurred at this intersection from October, 1981, through July, 1982, between 11:30 p.m. and 5:30 a.m. while the traffic signal operated in a flashing mode. Based on the accident history of this intersection the trial court determined the flashing light to be a “substantial contributing cause of the accident.” The court further stated that the duty of DOTD was “to study, inspect, improve and maintain the traffic control light at this intersection for the purpose of preventing the type of accident that, in fact, occurred. The risk of such an accident was certainly within the ambit of this duty.”
DOTD was held liable under theories of negligence (La.C.C. art. 2315) and strict liability (La.C.C. art. 2317). The distinction between recovery under these theories is that under strict liability the plaintiff is relieved of proving that the owner or custodian of the thing which caused the damage knew or should have known of the risk involved. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982). Plaintiff must still prove under both theories that: (1) defendant owned or had custody of the thing which caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; and (3) causation. Farr v. Montgomery Ward and Co., Inc., 430 So.2d 1141 (La.App. 1st Cir.1983), writ denied, 435 So.2d 429 (La.1983).
The control and knowledge of DOTD are not at issue here. It is uncontroverted that DOTD knew that the traffic signal operated in the flashing rather than continuous mode between the hours of 11:30 p.m. and 5:30 a.m. from October, 1981, through July, 1982. Consequently, the duty of the department to protect against injuries resulting from the risk created by signalization of the intersection in the flashing mode is the same whether analyzed under negligence or strict liability concepts. Kent, 418 So.2d at 497; Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983).
The extent of the duty (and the resulting degree of care necessary to fulfill the duty) depends upon the particular facts and circumstances of each case.... (T)he standard for determining liability is to presume the owner’s knowledge of the risk presented by the thing under his control and then to determine the reasonableness (according to traditional notions of blameworthiness) of the owner’s conduct in light of that presumed knowledge.
Kent, 418 So.2d at 497 (emphasis original). Accordingly, in order to determine whether the signalization of this intersection ere- *1324 ated an unreasonable risk of harm to others we would need to consider not only the number of accidents which have occurred, but reasons why the State determined the flashing was a desirable mode during hours it was implemented. These would include factors such as assisting flow of traffic in minimum use hours by not requiring a time stop, and safety considerations for persons required to make a timed stop during the hours when few people would be around to provide protection. See Entrevia v. Hood, 427 So.2d 1146 (La.1983). Under the circumstances of this case, however, we do not find it necessary to determine whether the signalization created an unreasonable risk of harm to others since it is our conclusion that even if it did, this plaintiff was not within the scope of the risk against which the signalization was designed to protect.
All rules of conduct ... exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury.
Malone, Ruminations on Cause-In-Fact, 9 Stan.L.Rev. 60, 73 (1956). See also, Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). The question of liability hinges on the duty, if any, owed by DOTD to this particular plaintiff. Farr, 430 So.2d at 1143.
DOTD is not responsible for all accidents occurring on state highways. It does not guarantee the safety of persons traveling on state highways, nor does it serve as an insurer against all injuries resulting from obstructions or defects thereon. Generally, DOTD has the duty to construct and maintain state highways in a condition which is reasonably safe for persons exercising ordinary care and reasonable prudence. United States Fidelity and Guaranty Co. v. State, Department of Highways, 339 So.2d 780 (La.1976). Where inadequate or improper signalization of an intersection creates an unusually hazardous risk to a driver exercising ordinary care and prudence, DOTD may be liable for damage caused by that hazardous condition.[2] Hodges v. State, Department of Highways, 370 So.2d 1274 (La.App. 3d Cir.1979), writ denied, 374 So.2d 660 (La.1979). However, the duty owed by DOTD does not include the obligation to protect a plaintiff against harm which would not have occurred but for the grossly negligent operation of the motor vehicle by plaintiff. See Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La.App. 1st Cir.1982), writ denied, 420 So.2d 982 (La.1982). Upon review of the record we agree with that portion of the judgment holding Burge negligent. However, 50% negligence cannot be attributed to DOTD with respect to Burge.
Comparative negligence does not change duty/risk analysis. The duty must still encompass the risk to the class of which the plaintiff is a member or there is no percent of negligence as to that plaintiff while there might be to others for the same conduct. Professor Alston Johnson, in his analysis of the effect of comparative negligence on duty/risk concluded:
(T)ort cases may be divided into three broad categories: (a) those in which a defendant’s duty extends to the protection of a plaintiff against his own carelessness; (b) those in which defendant is not liable because the plaintiffs conduct has produced a situation for which the law should not require a reasonably pru *1325 dent person to prepare and respond; and (c) those that fall in neither category, in which the victim’s fault and the defendant’s fault may each be weighed in the balance.
Johnson, Comparative Negligence and the Duty/Risk Analysis, 40 La.L.Rev. 319, 333 (1980). He concluded that in (a) cases comparative will not reduce the award, in (b) cases comparative will not allow an award even at a reduced level[3] and in (c) cases comparative will weight fault. There seems to be general agreement with the Johnson analysis. See Dulaney v. Travelers Insurance Co., 434 So.2d 578 (La.App. 1st Cir.1983); Frain v. State Farm Insurance Co., 421 So.2d 1169 (La.App.2d Cir.1982). The real problem now is to fit the case to the category.
Some cases where a plaintiff’s sub-standard conduct had been held not to bar recovery, pre-comparative, have been moved into the third category by the Louisiana Supreme Court. Compare Baumgartner v. State Farm Mutual Automobile Insurance Co., 356 So.2d 400 (La.1978) with Turner v. New Orleans Public Service Inc., 476 So.2d 800 (La.1985). This court has done the same with defective shoulder cases. Compare Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979) with Motton v. Travelers Insurance Company, Ascension Parish Emergency Ambulance Service District and Ascension Parish Police Jury, 484 So.2d 816 (La.App. 1st Cir.1986). However, recovery by a negligent plaintiff against DOTD in the defective shoulder cases appears to be an aberration designed to protect negligent plaintiffs whose conduct the Supreme Court considered to be somewhat expected. Before comparative there was never a blanket rule that DOTD owed a duty to non-prudent drivers. In fact, Hessifer, 416 So.2d 368, is a good example of refusal to extend the duty of DOTD to include the risk of a plaintiff injured by third party negligence even though the maintenance of the roadway was sub-standard and contributed to the accident.
The state’s duty in highway cases always has been stated as extending to the reasonably prudent driver. However, pre-comparative, recovery was denied the non-prudent driver simply by finding the non-prudent driver guilty of contributory negligence (except in Rue situations.) See Efferson v. State, Through Department of Transportation & Development, 463 So.2d 1342 (La.App. 1st Cir.1984), writ denied, 465 So.2d 722 (La.1985). Under comparative, recovery cannot be denied the non-prudent driver on the basis of contributory negligence; it can only be reduced. But, the state’s duty is to the prudent driver. Either the state’s duty has changed since comparative to extend to the non-prudent driver, or the non-prudent driver is still not protected and is barred from recovery. There is no legislative nor jurisprudential rule from the Supreme Court that has changed the duty. Consequently, even under comparative the non-prudent driver cannot recover from the state except in those instances where recovery has previously been allowed in spite of contributory negligence.[4]
*1326 In the area of signals it is probably true that DOTD could always do more. However, it is an unreasonable burden to make DOTD liable for additional signals where the plaintiff involved does not heed those that are present. It seems clear that this type case should fall under the type (b) classification.
We hold that the department’s duty to provide safe highways to reasonably prudent drivers does not extend to the risk of a plaintiff whose injury is caused by her own gross negligence and inattention to a properly working, clearly visible, traffic signal. Accordingly, we reverse that portion of the judgment holding DOTD liable. Costs of this appeal are assessed against plaintiffs.
REVERSED AND RENDERED.

. Speed at impact necessitated this finding or a finding that Burge did not stop at all. Questionable testimony of an alleged eyewitness indicated that Burge did stop. The trial court accepted this part of the eyewitness testimony (Burge herself having no recollection). However, the trial court rejected the testimony of the witness that Burge stopped right at the intersection rather than at the stop bar. If Burge did not stop at all, her failure to obey the flashing red light would be the sole cause of the accident. If she stopped where the witness testified, the sole cause of the accident obviously would not have been the type of signal but her failure to see what was clearly there to be seen upon obeying the signal. However, the opinion analyzes the duties based on the facts found by the trial court.

. In Hatcher v. State, Through Department of Transportation & Development, 467 So.2d 584 (La.App. 3d Cir.1985) plaintiff entered an intersection under a flashing yellow light and collided with a vehicle which had entered the intersection under a flashing red light. The intersection had a history of frequent right angle collisions. The court found that plaintiff was within the class of persons to whom DOTD owes a duty to provide safe highways. DOTD breached that duty (proper signalization) and was, therefore, liable. The duty of DOTD to the motorist entering an intersection under a flashing red light was not at issue in Hatcher. In Holt v. Singletary, 441 So.2d 330 (La.App. 5th Cir.1983) the court did not discuss the plaintiffs conduct but assumed it was reasonably prudent and therefore a covered risk.

. A good argument can be made that in category (b) cases there is simply no negligence on the part of the defendant. Only Holt, 441 So.2d 330, where negligence appears to have been attributed to DOTD based solely on the number of accidents at the intersection restrains us from analyzing this case in that manner. Additionally, based on Hatcher, 467 So.2d 584, we cannot say that the same facts would not produce a degree of negligence on the part of DOTD in favor of the driver with the amber light.

. In spite of the duty of the state to maintain highways reasonably safe for reasonably prudent motorists there may be areas where policy considerations require the courts to carve out Rue type exceptions and thus compare negligence. Where the claimant driver ignores properly placed, properly functioning traffic signals is not one of those areas.