493 So.2d 661 (1986)
Frank GADMAN, Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Office of Highways and Caddo Parish, Louisiana, in solido, Appellant.
No. 17974-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1986.
Rehearing Denied September 18, 1986.
*663 C. William Gerhardt & Associates by C. William Gerhardt, Shreveport, for plaintiff-appellee.
John A. Files, Shreveport, for intervenor-Susannah Wilson Gadman.
Robert T. Talley, Baton Rouge, for defendant-appellant.
Lunn, Irion, Johnson, Salley & Carlisle by Ronald E. Raney, Shreveport, for intervenor-Commercial Union Ins. Co.
Blanchard, Walker, O'Quin & Roberts by Roy S. Payne, Shreveport, for defendant-appellee Caddo Parish Police Jury.
Before JASPER E. JONES Jr., NORRIS and LINDSAY, JJ.
*664 NORRIS, Judge.
This is a suit for personal injuries by plaintiff, Frank Gadman, against the State of Louisiana, through the Department of Transportation and Development (DOTD).[1] Commercial Union Insurance Company (CU) intervened to recover workers compensation and medical expenses it had previously paid to plaintiff. After trial, the lower court concluded that the DOTD was negligent for failure to adequately sign the roadway and that plaintiff was contributorily negligent. Utilizing comparative negligence, the trial judge allocated fault of 60% to the DOTD and 40% to plaintiff. Accordingly, judgment was rendered in favor of plaintiff for $134,384.81. Judgment was also rendered in favor of CU for $30,855.00 for past compensation and medical expenses paid to plaintiff. CU was also given a credit for any future expenses or benefits it might have to pay. From this judgment, the DOTD appealed and plaintiff answered the appeal. For reasons expressed, we amend and affirm.
The issues on appeal are (1) whether the trial court erred in finding the DOTD at fault for the plaintiff's injuries; (2) whether the trial court erred in its allocation of fault; and (3) whether the 1985 amendment to LSA-R.S. 23:1101, which provides for reduction of the workers compensation carrier's award in proportion to the employee's degree of fault, is applicable.
The accident giving rise to this action occurred in the late morning of August 22, 1982, on La. Hwy. 168, approximately 1.2 miles west of its intersection with Hwy. 71 in Caddo Parish. The weather was clear and the road was dry. Hwy. 168 is a two-lane rural highway with numerous curves. In the vicinity of the accident, there are two adjacent curves. The first is a moderate right-hand curve. The second is a sharp left-hand curve. The roadway measures 18 feet 6 inches in width. At the time of the accident, the posted speed limit was 55 mph and the only sign warning motorists of the two curves was a reverse curve sign immediately preceding the first curve. The plaintiff was proceeding eastbound driving a fully loaded 18 wheel tanker truck owned by his employer, P & O Falco. When plaintiff approached the series of two curves, he noticed the reverse curve sign and slowed to approximately 40 mph in fourth gear. He negotiated the first curve. As he entered the second curve, he felt the truck lean. He began braking and shifted down into third gear. However, he could not hold the truck on the road and estimated he had slowed to approximately 30-32 mph when the vehicle left the highway, flipped over and came to rest along the side of the road.
Earlier that morning the plaintiff had traveled Hwy. 168 in the opposite direction on his way to pick up a load of crude oil. He was returning via Hwy. 168 eastbound when the accident occurred. He had never traveled Hwy. 168 before the day of the accident.
As a result of the accident, he suffered a compression fracture of the L-4 vertabrae and multiple lacerations and bruises. Ultimately, he was given a 10% permanent residual disability.
Plaintiff filed suit asserting that the DOTD had failed to provide adequate signs warning of a dangerous road condition. The DOTD stipulated that it was responsible for the construction, design and maintenance of the roadway where the accident occurred and that the roadway was, at the time of the accident, within its care, custody and control.
At trial, in addition to those mentioned above, the following key facts were revealed. The plaintiff testified that he was driving below the posted speed limit, saw the single reverse curve sign immediately before entering the first curve and slowed his rate of speed. As he came out of the first curve, plaintiff testified that he could not entirely see the second curve and thus could not ascertain its severity.
*665 This latter fact was substantially corroborated by the plaintiff's expert, Mr. Duaine Evans, who testified that no driver could ascertain the severity of the second curve. He conducted a ball bank test and made measurements of the roadway. He found the second curve where the plaintiff's vehicle left the roadway had a radius of 294 feet and a curvature of 19-½ degrees. Based on his tests, measurements and the standards set forth in the Uniform Traffic Control Manual and the Policy on Geometric Designs of Rural Highways, he concluded that the area where the accident occurred was unreasonably dangerous and inadequately signed. He characterized the curve as a trap that motorists entered without sufficient warning. Evans opined adequate signing of the curve required an advisory speed limit sign of 25 mph, a reverse turn sign, as opposed to the reverse curve sign actually in place, and several chevron type signs. The reverse turn sign indicates a much sharper curve than the reverse curve sign and is recommended by the Uniform Traffic Control Manual whenever the advisory speed is less than 30 mph. The chevron type signs are horizontal Vs that are placed around the curve and serve to forewarn motorists of the existence and severity of a curve. In Mr. Evans' professional opinion, if these additional warning signs had been in place, plaintiff would have heeded them, had no trouble in negotiating the curve and the accident would not have happened.
In contrast, the defendant's traffic expert, Mr. Walter E. Reed, a district engineer for the DOTD, testified that he believed the plaintiff should have been able to negotiate the curve at the speed he estimated he was traveling. He disagreed with the manner in which Mr. Evans conducted his ball bank test, and with the results of that test. However, he did not offer any independent test or measurements of his own. He also disagreed with Mr. Evans' opinion that the DOTD had a mandatory duty to put up the additional warning signs. However, he did admit that the curve in question was dangerous and that the signing scheme suggested by Mr. Evans was more appropriate than that existing at the time of the accident. He also admitted that under the more conservative guidelines the DOTD actually followed, if he had obtained the same test results as Evans, he would have erected an advisory speed sign of 25 mph.
At the time of the accident the estimated traffic flow on La. Hwy. 168 was approximately 340 cars per day. The DOTD contends on appeal that thousands of motorists used Hwy. 168 without incident prior to plaintiff's accident. However, Mr. Archie Parker testified at trial that he had lived in close proximity to the accident site for two years prior to plaintiff's accident and that during this time there had been two other one-vehicle accidents on that same curve by motorists traveling in the eastbound direction. These accidents occurred only some seven or eight months before plaintiff's accident.
In written reasons for judgment, the trial court found the DOTD liable under both negligence and strict liability. LSA-C.C. art. 2315, 2317. In holding the DOTD negligent, the trial court found the roadway where the accident occurred was unreasonably dangerous; that the DOTD knew or should have known of this condition; and that the DOTD's failure to provide adequate warning signs was a substantial cause of the accident. The trial court also concluded that plaintiff was negligent in failing to exercise sufficient caution under the circumstances and accordingly allocated 40% of the fault to him. The workers compensation carrier was then awarded reimbursement for all past payments made to plaintiff which award was not reduced by the plaintiff's allocated degree of fault. CU was also given credit for future payments. From this judgment the DOTD appealed and plaintiff answered that appeal.

DISCUSSION
The trial court expressly found the DOTD had both actual and constructive knowledge of the condition of the road. The DOTD does not contest this finding on *666 appeal and the record amply supports it.[2] Therefore, there is no need to presume knowledge under a theory of strict liability and a simple negligence analysis will suffice.[3]
As in any negligence action, the plaintiff must prove the existence of a duty, a breach of that duty, and damages as a result of that breach. Stevens v. State, Through Dept. of Transp. and Dev., 440 So.2d 920 (La.App. 2d Cir.1983), writ den. 443 So.2d 1119 (La.1984); Everette v. Louisiana Dept. of Transp., 424 So.2d 336 (La. 1982).
The DOTD does not dispute the fact that plaintiff suffered damages as a result of the accident. It does contend that the trial court erred in concluding that it owed plaintiff, a negligent motorist, any duty. Further, even if a duty was owed the DOTD contends that the trial court erred in finding that the plaintiff proved the roadway where the accident occurred was unreasonably dangerous and in finding the plaintiff proved the necessary causal connection between the breach of its duty and the accident.

DUTY
The DOTD is under a duty to maintain the highways and shoulders in a reasonably safe condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Holmes v. State, Through Dept. of Highways, 466 So.2d 811 (La.App. 3d Cir.1985), writ den. 472 So.2d 31 (La.1985). The duty to maintain reasonably safe highways and shoulders extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition. Sinitiere v. Lavergne, supra; Holmes v. State, Through Dept. of Highways, supra. This duty imposed on the DOTD is the same under either strict liability or negligence. See Kent, supra. Where an unreasonably dangerous condition exists the DOTD may fulfill its duty of reasonable care by either correcting the dangerous condition or by posting adequate warnings of its presence. Wilkinson v. DOTD, 434 So.2d 1155 (La.App. 1st Cir. 1983), rev. on other grounds 439 So.2d 388 (La.1983).
In supplemental brief, the DOTD, relying on Burge v. City of Hammond, 489 So.2d 1320 (La.App. 1st Cir.1986), urges that it has no duty to protect negligent motorists. We disagree and respectfully decline to follow Burge insofar as it appears to hold that, except for defective shoulder cases, the DOTD owes a duty to construct and maintain highways in a reasonably safe condition only to non-negligent motorists. Contributory negligence, as a complete bar to recovery, was eliminated by LSA-C.C. art. 2323. Turner v. New Orleans Public Service, Inc., 471 So.2d 709 (La.1985). We believe that in the case where the fault of a motorist and the fault of a governing body responsible for warning motorists against unusually dangerous road hazards combine to produce an accident, comparative negligence is applicable. Veazy v. Parish of Avoyelles, 476 So.2d 1057 (La.App. 3d Cir.1985), writ den. 478 So.2d 1238 (La.1983); Ledbetter v. State Dept. of Transp. and Dev., 482 So.2d 1035 (La.App. 3d Cir.1986).

UNREASONABLE RISK OF HARM
The DOTD urges that the lower court erred in concluding that this curve, as it was signed, posed an unreasonable risk of harm to motorists.
The standard for evaluating whether an unreasonably dangerous condition exists is essentially the same under negligence and strict liability. Entrevia v. Hood, 427 So.2d 1146 (La.1983). It entails primarily *667 the same policy considerations used in deciding the scope of duty or legal cause under a traditional duty/risk analysis. Entrevia, supra, and Hill v. Lundin Associates, 260 La. 542, 256 So.2d 620 (1972). In both delictual areas the facts of each case must be considered in terms of moral, social and economic considerations in much the same way as the legislature defines the standards or patterns of utility and morals in the life of the community. Entrevia, supra, at 1149. The primary question is one of reasonableness. Id., and Kent, supra. This determination involves a balancing of claims and interest, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations. Id.
Particularly applicable to the instant case is the language in Von Cannon v. State Dept. of Highways, 306 So.2d 437 (La.App. 3d Cir.1975), writ den. 309 So.2d 681, 682 (La.1975), dealing with the DOTD's duty to provide adequate warnings against dangerous conditions:
There is no hard and fast rule as to the types of warnings or safeguards. Warnings should be sufficient to alert the ordinary, reasonable motorist having in view the probable traffic, the character of the road and the use reasonably to be anticipated.
Here, the record reveals that Hwy. 168 was a moderately traveled rural highway. Both experts agree that the curve where the plaintiff's vehicle left the roadway was severe and dangerous. Mr. Archie Parker testified there were two prior accidents at this very same location. Contrary to the DOTD's contentions on appeal, we find his testimony is both persuasive and corroborated. Mr. Parker lived only one-half mile from the scene of the accident. He was an impartial witness and had no interest in the outcome of the suit. Moreover, counsel for the DOTD stipulated at trial that Mr. Parker's wife would have corroborated his testimony if called to testify. The evidence also indicates that motorists could not negotiate the curve at the posted speed limit nor see the entirety of the second curve and were thus not completely aware of its severity. The posted speed limit was 55 mph and the only sign warning motorists of this dangerous curve was a single reverse curve sign.
Considering the admitted danger presented by the subject curve and the two previous similar accidents at this location, we do not find that the trial court was manifestly erroneous in concluding that the curve where the accident occurred was unreasonably dangerous. Further considering the relative ease with which the DOTD could have adequately warned of the danger,[4] we likewise conclude that the trial court did not err in its finding that the DOTD breached its duty to plaintiff to adequately warn of the unreasonably dangerous road hazard. The magnitude of the risk and the likelihood of harm was too great to justify allowing the dangerous condition to exist without adequate warning. The single reverse curve sign did not adequately warn motorists of the danger presented by the severe second curve. The plaintiff's accident is exactly the kind of harm that installation of advisory speed signs, reverse turn signs and chevrons seeks to prevent.
The DOTD cites Efferson v. The Dept. of Transp. and Dev., 463 So.2d 1342 (La.App. 1st Cir.1984), writ den. 465 So.2d 722 (La. 1985) as a nearly identical factual situation. That case did involve plaintiffs who were injured when the vehicle in which they were riding failed to negotiate a curve. However, we feel the factual similarities end at that point. Unlike the instant case, the roadway in Efferson had numerous warning signs and speed advisory signs. *668 Unlike plaintiff in the instant case, the driver of the vehicle in Efferson was familiar with the roadway, had been drinking, was traveling at an excessive rate of speed, and failed to observe the signs that were present. Finally, the Efferson court expressly acknowledged that while the curve could not be considered unreasonably dangerous in that case, it might be considered so in a situation where someone was unfamiliar with the roadway. Efferson is not controlling.

CAUSATION
The DOTD also argues that plaintiff's evidence was insufficient to connect the signing deficiencies to the accident. We disagree. The record reveals the necessary causal connection. In order to prove causation, plaintiff need only prove that, more probably than not, the accident would not have happened but for the defendant's negligence. Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3d Cir. 1981), writ den. 410 So.2d 760 (La.1981), cert. den. 457 U.S. 1132, 73 L.Ed.2d 1349, 102 S.Ct. 2957 (1982). In the instant case, Mr. Evans, plaintiff's expert, testified that his analysis of all the evidence convinced him that plaintiff's vehicle did not slide off the road but was forced off the roadway due to the centrifugal force associated with rounding the severe curve. His opinion, once again, was that the DOTD should have erected a reverse turn sign with an advisory speed of 25 mph and chevron signs to adequately warn motorists of the severity of the dangerous second curve. Had these signs been present, Evans was convinced plaintiff would have observed them, obeyed them, reduced his speed accordingly, and the accident would have been avoided. This conclusion is justified in the instant case. Plaintiff testified he was driving carefully, below the posted speed limit, and that he saw the single reverse curve sign in place prior to entering the first curve. Plaintiff obviously obeyed this warning because he reduced his speed even further. The fact that plaintiff saw and obeyed the sign in place convinced the trial court, and convinces us, that he would have done the same had additional signs been posted. A presumption exists that had the appropriate signs been in place to warn plaintiff of the dangerous curve he would have obeyed them. Willis v. Everett, 359 So.2d 1080 (La.App. 3d Cir.1978), writ den. 362 So.2d 800 (La.1978); Gas Util. Dist. No. 1 of Baton Rouge v. Houk, 439 So.2d 514 (La. App. 1st Cir.1983), writ den. 443 So.2d 584 (La.1983). DOTD certainly has not rebutted this presumption. Finally, while plaintiff could have proceeded with even greater caution, the evidence certainly will not support the conclusion that his carelessness was the sole cause of the accident. The trial judge heard all the evidence and concluded that the DOTD's failure to provide adequate warning for an unreasonably dangerous condition was a substantial cause of the accident. This factual determination is not clearly wrong. Cantor v. Koehring, 283 So.2d 716 (La.1973).
The DOTD cites our recent decision in Golden v. Madden, 469 So.2d 1039 (La. App. 2d Cir.1985) as authority for its contention that Gadman failed to prove causation. However, Golden is distinguishable from the instant case.[5] In Golden, we affirmed a trial court's factual finding that the sole cause of the accident was the plaintiff's inattentiveness and failure to maintain control of her vehicle. In Golden, the highway was being resurfaced with asphalt and consequently portions of the shoulder had an approximate 3-½ to 4-½ inch drop-off. The plaintiff was injured when she "allowed" the wheels of her car to drift off the roadway and attempted to jerk her vehicle back onto the road. The evidence in Golden strongly indicated that the sole cause of the accident was the plaintiff's inattentiveness and failure to maintain control of her vehicle as opposed to the DOTD's failure to provide adequate *669 warnings. In fact, the temporary construction project in Golden was "well signed" with "Under Construction" and "speed advisory" signs. Moreover, the shoulder condition was obvious and the plaintiff had driven several miles into the project before straying off the road. The plaintiff in Golden admitted that she may have looked away or have been looking for something on the floorboard of her car when the accident occurred.
In contrast, the dangerous curve in the instant case had existed since the road's construction and was marked by only a single reverse curve sign. Moreover, the severity of the curve was not as obvious as the shoulder drop-off in Golden. In fact, it was partially obscured. Finally, there is no evidence that the plaintiff "allowed" his vehicle to stray off the road.
In its supplemental brief the DOTD further cites the recent decision of Kennison v. DOTD, 486 So.2d 267 (La.App. 3d Cir. 1986) as controlling of the instant case. We have carefully reviewed this case and do not find it controlling. As in Golden, supra, and Efferson, supra, the evidence in Kennison overwhelmingly indicated that the sole cause of the accident was the plaintiff's negligence. That is simply not the case here.

ALLOCATION OF FAULT
In his answer to the appeal, plaintiff contends that the trial court erred in finding him comparatively at fault and alternatively, if he was at fault, in allocating an abusively high (40%) degree of fault to him.
The trial court's allocation of fault is a factual determination and should not be disturbed on appeal unless it is clearly wrong. Towns v. Georgia Cas. & Sur. Co., 459 So.2d 124 (La.App. 2d Cir.1984).
Based on the evidence contained in this record we are not prepared to say that the trial court was clearly wrong in its finding that Gadman was contributorily negligent in causing this accident.
However, we do find that the trial court was clearly wrong and abused its discretion in allocating 40% fault to plaintiff. Motton v. Travelers Ins. Co., 484 So.2d 816 (La.App. 1st Cir.1986); Varnado v. Continental Ins. Co., 446 So.2d 1343 (La.App. 1st Cir.1984).
In Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La. 1985), our Supreme Court offered guidance for apportioning fault under a comparative fault system:
In determining the percentages of fault, the trier of fact should consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertance or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. 469 So.2d at 974.
The greater the risk of harm to others created by a party's conduct, the greater that party's fault. Turner v. New Orleans Public Service, Inc., supra.
In the instant case, we find the evidence of plaintiff's negligence to be slight. While Gadman had general knowledge of the curvy nature of the road, it is unreasonable to charge him with knowledge of the existence and severity of the specific curve. Nonetheless, he was a professional and experienced truck driver and had been warned by his superiors of the dangerous curves on Hwy. 168. He also had first-hand knowledge of the curves since he had *670 traveled Hwy. 168 in the opposite direction that same morning. Finally, he was driving a fully-loaded eighteen wheeler and was obligated to travel this dangerous roadway with a higher degree of care. We find his failure to exercise the required degree of care, maintain the proper lookout and keep control of his vehicle, contributed to the accident. The DOTD, on the other hand, had specific knowledge of the road's dangerous condition and failed to adequately warn motorists. It was solely within the DOTD's power to correct the dangerous condition and its failure to do so created a continuing risk of harm to a great number of people.
As in any review of damages, we are limited to lowering the award against any party to the highest point we would have affirmed on appeal. Finley v. North Assurance Co. of America, 476 So.2d 837 (La.App. 2d Cir.1985); and Coco v. Winston Industries Inc., 341 So.2d 332 (La. 1976). Under the circumstances of this case, we find the highest percentage of negligence attributable to plaintiff that we would have affirmed on appeal is 25%. Accordingly, we amend the lower court judgment to fix plaintiff's negligence at 25% and that of the DOTD's at 75%.

PLAINTIFF'S CLAIM FOR REDUCTION AGAINST CU
Finally, plaintiff claims that if comparative fault is used to reduce his damage award, then under the 1985 amendment to LSA-R.S. 23:1101, the award to the workers compensation carrier should be proportionately reduced. We observe that CU, as the workers compensation carrier, intervened in the court below to recover amounts paid to the plaintiff as a result of the accident. Judgment was awarded in favor of CU for the full amount of past compensation and medical benefits. In addition, CU was given a credit for any future amounts that it might become obligated to pay. These sums were ordered to be paid from the judgment awarded to plaintiff against the DOTD. The only party to appeal the judgment was the DOTD. The plaintiff did not file an appeal of his own. He only answered the DOTD's appeal. It is in plaintiff's answer to the DOTD's appeal that plaintiff claims the judgment rendered in favor of CU should be proportionately reduced. Under LSA-C.C.P. art. 2133, an appellee, by answering an appeal without filing an appeal on his own behalf, may seek relief from any portion of the judgment rendered against him in favor of appellant. This article does not, however, give an answer the effect of appeal with respect to any portion of the judgment rendered against appellee in favor of a party not an appellant. Vicknair v. Hibernia Bldg. Corp., 479 So.2d 904 (La. 1985). An answer to an appeal only permits modification or revision of the judgment between the answering party and the appellant. Mitchell Bros. v. Dinvaut, 374 So.2d 199 (La.App. 4th Cir.1979), writ den. 376 So.2d 1271 (La.1980). In the instant case, in order for plaintiff to obtain relief against CU (a non-appealing party) plaintiff was required to file a motion for appeal and not simply answer the DOTD's appeal. Shelton v. Aetna Cas. & Sur. Co., 334 So.2d 406 (La.1976). Therefore, the portion of the judgment awarding reimbursement in favor of CU is final and definitive. LSA-C. C.P. arts. 1841, 1842.
Even if the plaintiff had properly appealed the judgment in favor of CU, we would still find that CU's right to reimbursement had vested at the time the accident occurred and that the 1985 amendment to LSA-R.S. 23:1101 could not be retroactively applied to deprive it of this vested right. See, Rico v. Vangundy, 461 So.2d 458 (La.App. 5th Cir.1984).
In accordance with the foregoing reasons we amend the lower court's judgment to fix the fault of the parties as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, FRANK GADMAN, and against the defendant, STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, OFFICE OF HIGHWAYS, in the sum of ONE HUNDRED *671 SIXTY-SEVEN THOUSAND NINE HUNDRED EIGHTY ONE and 1/100 ($167,981.01) DOLLARS (being comprised of 75% of: $55,512.03 loss of past earnings, $110,000.00 present value of future loss of earnings, $3,000.00 for future medical expenses, $5,462.66 for past medical expenses, and $50,000.00 for pain, suffering and disability), with legal interest thereon from date of judicial demand until paid and all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in addition to the court costs herein, the court assesses the following expert witness fees as court costs: The Orthopedic Clinic (Dr. Bicknell), $400.00; Dr. Richard H. Galloway, Ph.D., $740.00; and Duaine T. Evans, Traffic Engineering Consultant, $1,627.18; said costs, like all court costs herein, are taxed 75% to the defendant and 25% to the plaintiff.
The remainder of the trial court's judgment is affirmed.
Costs of this appeal, in the amount of $60.00, are assessed against the State of Louisiana, Through the Department of Transportation and Development. LSA-R.S. 13:4521, 13:5112.
AMENDED IN PART AND AFFIRMED.
NOTES
[1] Plaintiff originally sued both the DOTD and the Parish of Caddo. However, Caddo Parish was dismissed by stipulation early in the litigation.
[2] In fact, the expert witness for the DOTD, Mr. Reed, admitted that the curve in question was a dangerous curve.
[3] As noted by the Louisiana Supreme Court in Kent v. Gulf States Utilities, 418 So.2d 493 (La. 1982), where knowledge of the alleged dangerous condition is found there is no need to presume knowledge and the imposition of strict liability serves no useful purpose. Instead, liability will depend upon analysis of the reasonableness of the parties' conduct in allowing a dangerous condition to exist.
[4] The fact that the DOTD could have easily obtained and installed the additional warning signs is amply illustrated by its action subsequent to the plaintiff's accident. Shortly after the plaintiff's accident, the DOTD placed an advisory speed of 25 mph before the series of curves. This development was, of course, inadmissible as evidence of the DOTD's negligence. See Galloway v. Employers Mut. of Wausau, 286 So.2d 676 (La.App. 4th Cir.1974), writ den. 290 So.2d 333 (La.1974); cf. Fed.R.Ev.Rule 407.
[5] This writer dissented in Golden being of the opinion that comparative negligence should have been applied in that case.